STATE OF NEW YORK et al., Appellants-Respondents, v ALEXANDER RUTKOWSKI et al., Respondents-Appellants, and CHARLES E. BABCOCK et al., Respondents.

Third Department, June 9, 1977

*Louis J. Lefkowitz, Attorney-General (Francis J. Keehan and Ruth Kessler Toch* of counsel), for appellants-respondents.

*Galman & Krutman (Robert Krutman* of counsel), for Alexander Rutkowski and another, respondents-appellants.

*Goldstein & Goldstein (Benjamin M. Goldstein* of counsel), for Gloria Stevens, respondent.

MAIN, J. On July 17, 1971, defendants Rutkowski and Conti purchased a parcel of land in the Town of Neversink, Sullivan County. Subsequently, between August 7, 1971 and March 17, 1973, they proceeded to sell from this parcel to the other defendants herein or their predecessors in title lots ranging in size from 0.62 of an acre to 2.02 acres, and then on February 8, 1974 Conti sold his interest in the two remaining lots from the original parcel to Rutkowski. Since no subdivision plans showing adequate water supply and sewage disposal facilities for the parcel have as yet been filed with the Department of Health, according to plaintiffs, all of the above sales by Rutkowski and Conti were allegedly made in direct contravention of section 1116 of the Public Health Law and section 17-1505 of the Environmental Conservation Law.

As a result, plaintiffs commenced the present action, and in the first cause of action pleaded they sought, *inter alia,* a judgment enjoining Rutkowski from selling, offering for sale, leasing or renting any lot from the parcel or erecting a permanent building thereon unless and until a subdivision plan is approved by the Department of Health and further directing Rutkowski and Conti to file such a plan and the

other defendants, all owners of lots in the parcel, to allow Rutkowski and Conti to enter upon their lots to make the tests and surveys necessary for the preparation of the plan. For their second and third causes of action they sought the assessment of civil penalties against Rutkowski and Conti, pursuant to section 12 of the Public Health Law and section 17-1707 of the Environmental Conservation Law, for their violations of section 1116 of the Public Health Law and section 17-1505 of the Environmental Conservation Law. Finally, as a fourth cause of action, they sought a judgment requiring Rutkowski and Conti to abate an alleged public nuisance as purportedly evidenced by the faulty operation of the septic system on the lot of defendants Steven and Mary Lu Drobysh.

Ultimately, plaintiffs decided to move for summary judgment on all four causes of action, and their motion came on to be heard on October 10, 1975. Thereafter, Special Term denied the motion on the first three causes of action and instead granted to defendants summary judgment declaring sections 1115 and 1116 of the Public Health Law and section 17-1505 of the Environmental Conservation Law unconstitutional. With regard to the fourth cause of action, however, the motion was granted, and Rutkowski and Conti were ordered to abate the public nuisance caused by the failure of the Drobysh's septic system. These appeals ensued.

Largely for the same reasons enunciated by Special Term in its opinion, we find ourselves in agreement with its grant of summary judgment to defendants on the first three causes of action and its corresponding holding that the statutes in question are so vague and indefinite as to be unconstitutional. Generally, these statutes prohibit the selling, leasing or renting of any portion of a subdivision or the erection of a permanent building thereon until a plan or map showing adequate water supply and sewage disposal facilities for the subdivision has been approved by an appropriate department of health. The major difficulty is presented by the use in the enactments of the term "subdivision", which the Legislature has defined as: "any tract of land which is hereafter divided into five or more parcels along an existing or proposed street, highway, easement or right-of-way for sale or for rent as residential building plots * * * regardless of whether the lots or plots to be sold or offered for sale, or leased for any period of time, are described by metes and bounds or by reference to

a map or survey of the property or by any other method of description." (Public Health Law, § 1115; Environmental Conservation Law, § 17-1501.)

This court has previously stated that this definition "leaves much to conjecture in the absence of a definition of the words 'tract', 'parcel', 'residential lots', and 'residential building plots' " (*Matter of Slavin v Ingraham,* 44 AD2d 874, 875, affd 37 NY2d 653). In our view, it would often be impossible for a person who wishes to sell portions of his property to determine with any degree of certainty whether or not he would thereby be creating a subdivision and thus must comply with the challenged statutes. Consider, for example, whether contiguous lands acquired under separate deeds from different grantors at different times constitute a single tract for purposes of creating a subdivision or whether a subdivision results when portions of a parcel are sold to five different persons over a long period of time and each constructs a residence on the purchased land. Although the answers to these queries are far from clear, the questions themselves are illustrative of the myriad problems and impossible predicaments created for landowners by the obvious imprecision in the statutory language under consideration here. Such being the case, the term "subdivision" is plainly not sufficiently definite so as to give warning to "men of common intelligence" as to the meaning and application of the enactments, and the enactments, therefore, do not pass constitutional muster (cf. *Cramp v Board of Public Instruction,* 368 US 278; *Trio Distr. Corp. v City of Albany,* 2 NY2d 690).

We note, also, that the dissenting opinion in the Court of Appeals in *Matter of Slavin v Ingraham* (37 NY2d 653, 658-62, *supra)* provides support for our holding here that the challenged statutes are constitutionally invalid. In their argument that the determination of the Commissioner of Health should be reinstated in that case, the dissenters obviously assume the validity of the enactments and state that, should a close case involving few and random sales be presented, the commissioner might conceivably conclude that there is no subdivision (37 NY2d at p 661). Not only does this statement indicate how these statutes inject an unnecessarily broad and indefinite element of land use control by the State into affairs best handled by local zoning regulations (cf. Public Health Law, §§ 1118, 1120), but, more significantly for our determination, it evidences the impermissible vagueness of statutory language

by conceding, in effect, that in many situations it will be impossible to predict with any degree of certainty, absent a factual determination by the commissioner, whether or not a subdivision is involved.

Turning now to the fourth cause of action, we find that Special Term improvidently granted plaintiffs summary judgment therein. Triable issues of fact exist as to whether the subject septic system is actually malfunctioning and, if such be the case, as to whose responsibility it is to rectify the situation. Under these circumstances, the grant of summary judgment was improper *(Phillips v Kantor & Co.,* 31 NY2d 307).

The judgment should be modified, on the law, by reversing so much thereof as granted plaintiffs summary judgment on their fourth cause of action and, as so modified, affirmed, without costs.

HERLIHY, J. (concurring in part and dissenting in part). We agree with so much of the majority decision herein as would affirm the denial of summary judgment to the plaintiffs on their first three causes of action; however, we do not agree with the affirmance of the grant of summary judgment in favor of the defendants, Rutkowski and Conti (sellers) declaring that sections 1115 and 1116 of the Public Health Law and section 17-1505 of the Environmental Conservation Law are unconstitutional. Further, we would not only reverse the grant of summary judgment to plaintiffs on their fourth cause of action, but we would also dismiss the complaint in its entirety without prejudice to further proceedings against the individual lot owners.

The sellers in their answer not only asserted as an affirmative defense that the subject statutory provisions were unconstitutional, they also denied the appropriate allegations of the complaint which alleged that they were "developing lots" and "selling" lots in a subdivision.

The question which must first be answered in this case is whether or not the record contains evidence that the sellers were engaged in the sale of a portion of a subdivision when they deeded out the various parcels referred to in the complaint. This record establishes without any serious dispute that at least five lots were sold by the sellers upon which residences were thereafter built. Furthermore, there can be no doubt that the sellers and various purchasers entered into the

purchase and sale of the individual lots with an understanding that the buyer intended to build a residence thereon. However, the deeds contain no such restriction.

The legal issue is whether such facts can or do establish a subdivision within the meaning of section 1115 of the Public Health Law and section 17-1501 of the Environmental Conservation Law which as applicable to this proceeding provides, in part, as follows: "any tract of land which is hereafter divided into five or more parcels * * * for sale * * * as *residential lots or residential building* plots * * * regardless of whether the lots or plots * * * are described by metes and bounds or by reference to a map or survey" (emphasis supplied).

While the language used to define a subdivision does require some concentration in deciding what is a subdivision, it certainly is not so vague or indefinite as to fail to give warning to "men of common intelligence" as referred to in the majority opinion.

The majority find the words "tract", "parcel", "residential lots" and "residential plots" indefinite (see *Matter of Slavin v Ingraham,* 44 AD2d 874, 875, affd 37 NY2d 653). However, the word "tract" is one which the law has long recognized in regard to real property and simply refers to a described amount of land (see *Matter of Slavin v Ingraham, supra;* Black's Law Dictionary [4th ed]). In this definition the words "parcel" and "residential lots" or "plots" are identical and clearly what is intended is to concentrate on the sale of five or more separately described pieces of land from one described tract of land. The subdivision does not occur until there has been a total of five divisions of pieces from the original tract (cf. *Matter of Patricia A.,* 31 NY2d 83, 86-87).

However, such a broad definition would reach any tract of land which is divided into five pieces regardless of the reason for such division and, accordingly, the Legislature required that the divided pieces be "for sale or for rent as residential lots or residential building plots." Lest there by any bewilderment, the word "plot" as used herein was obviously intended to include the breakdown of a large tract into five or more divisions which might include a piece large enough to be further divided by a subsequent purchaser and then be a plot from which lots could be derived. The mere fact that the words "parcel", "tract", "lot" and "plot" would have overlapping meanings in regard to real property generally does not

impute any vagueness in their meaning and usage in this statute.

It is the word "residential" that qualified this statutory language as to subdivision and the meaningfulness of that word is exemplified by the 1974 amendment of the definition of subdivision to include sale in "Suffolk [County] also as business, commercial or industrial lots or building plots" (L 1974, ch 802, § 6).

The law is well settled that it is the discretion of the Legislature (a discretion which courts will not ordinarily interfere with *[Manigault v Springs,* 199 US 473]) which determines what the best interests of the public require and what measures are reasonably necessary for the protection of such interest *(Bucho Holding Co. v Temporary State Housing Rent Comm.,* 11 NY2d 469; *Grove Hill Realty Co. v Ferncliff Cemetery Assn.,* 7 NY2d 403; *Matter of Stubbe v Adamson,* 220 NY 459, 469; *Diamant v Mount Pleasant Westchester Cemetery Corp.,* 10 AD2d 404).

The courts have ruled that in the absence of zoning regulations or covenants in deeds restricting the divided portions to residential use, the subsequent residential use does not constitute evidence that the division was to enable sale for such use *(Matter of Slavin v Ingraham, supra).* The definition requires such a restriction in order to qualify as a subdivision and given such an interpretation it is not vague and not unconstitutional. It is the unwarranted reliance by the plaintiffs upon the fact that residences are built upon lots as inferring a subdivision that results in vagueness and not the statutory definition itself (see McKinney's Cons Laws of NY, Book 1, Statutes, § 361).

In *Matter of Slavin v Ingraham (supra),* the Court of Appeals found it unnecessary to reach the constitutional question and while perhaps a similar situation might be found to exist in the present instance, in the posture of the action as it reaches this court, we should find the statute constitutional (see *People v Anonymous,* 56 Misc 2d 725, 726).

One of the most basic principles of constitutional law is that every legislative enactment carries with it a strong presumption of constitutionality *(O'Gorman & Young v Hartford Ins. Co.,* 282 US 251; *Montgomery v Daniels,* 38 NY2d 41; *People v Broadie,* 37 NY2d 100, 117, cert den 423 US 950). The present statute is not so constitutionally inhibited as to be unconstitutional.

Upon the present record the plaintiffs attached copies of the deeds to the complaint and those copies do not purport to restrict the use of the land in any way. There is no evidence that the land is zoned residential and summary judgment on the merits should have been granted to the sellers dismissing the complaint as to them. *Since it appears that all of the relief sought is based upon the legal theory that the lot or lots are part of a subdivision by virtue of the sellers' actions, the complaint should have been dismissed as to all defendants.*

The judgment should be modified by striking the declaration that sections 1115 and 1116 of the Public Health Law and section 17-1505 of the Environmental Conservation Law are unconstitutional and the grant of summary judgment to plaintiffs on their fourth cause of action and by amending the denial of summary judgment to plaintiffs to a denial of the motion in its entirety and to grant summary judgment in favor of the defendants dismissing the complaint, without prejudice.

KOREMAN, P. J., and KANE, J., concur with MAIN, J.; GREENBLOTT and HERLIHY, JJ., concur in part and dissent in part in an opinion by HERLIHY, J.

Judgment modified, on the law, by reversing so much thereof as granted plaintiffs summary judgment on their fourth cause of action, and, as so modified, affirmed, without costs.